NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

| | | |
|---|---|---|
| BARRISTER CIGARS, LLC, | : | TAX COURT OF NEW JERSEY |
| | : | |
| Plaintiff, | : | DOCKET NO. 009089-2022 |
| | : | |
| v. | : | |
| | : | |
| DIRECTOR, DIVISION OF | : | Approved for Publication |
| TAXATION, | : | In the New Jersey |
| | : | Tax Court Reports |
| Defendant. | : | |
| | : | |

Decided: April 1, 2025

Matthew D. Lee and Jonathan M. Wasser for plaintiff
(Fox Rothschild, LLP, attorney).

Michael J. O'Malley for defendant
(Matthew J. Platkin, Attorney General of New Jersey, attorney).

SUNDAR, P.J.T.C.*

This opinion decides the parties' respective summary judgment motions in the above matter. The issue is the appropriate base for computing the tax due under the Tobacco and Vapors Product Tax ("TPT") Act ("TPT Act"), N.J.S.A. 54:40B-1 to -14. The TPT Act imposes a 30% tax on the sale, use, or distribution of tobacco products within New Jersey. N.J.S.A. 54:40B-3(a). The tax is computed "upon the wholesale price," which is defined as the "actual price for which a manufacturer sells tobacco products to a distributor." Ibid., N.J.S.A. 54:40B-2. If a distributor or

_____

* Hon. Michael J. Duffy, J.T.C., did not participate in the publication consideration of this case.

wholesaler has not paid the "wholesale sales tax" under N.J.S.A. 54:40B-3(a), then the "retail dealer or consumer" is liable for "a compensating use tax of 30% of the price paid or charged for the tobacco product." N.J.S.A. 54:40B-3(c).

Plaintiff argues that it is a distributor under the TPT Act because it purchases tobacco products from out-of-state sellers. Since it does not buy directly from manufacturers, it does not have a manufacturer's "actual [sale] price," therefore, plaintiff contends, it can estimate the same. The estimated manufacturer's "costs," per the out-of-state cigar sellers, is about 40% of the amount they charge plaintiff (or are charged to these sellers by their suppliers). Further, plaintiff argues, to obtain the manufacturer's "actual [sale] price," it can deduct the estimated federal excise tax payable by the manufacturer, noting that in a prior audit of plaintiff, defendant's auditor had deemed such a deduction as appropriate.

Defendant contends that because the base for computing the tax due under the TPT Act is clearly defined by N.J.S.A. 54:40B-2, no estimation is permitted. Defendant also maintains that an individual auditor's views as to the deductibility of federal excise tax on tobacco products cannot control the application of the TPT Act. What controls is statutory/regulatory authority, or an adopted policy by defendant, permitting federal excise tax deduction. Those do not exist here.

For the reasons stated below, the court finds that while plaintiff falls within the statutory definition of a "distributor," it is not required to purchase tobacco

products directly from a manufacturer to use the lower tax base (wholesale price). Plaintiff, however, cannot estimate that wholesale price because the statute defines the term as the "actual price.". The court will afford plaintiff the opportunity to obtain information to prove the actual sale price. Therefore, it denies both parties' summary judgment motions on this issue. The court grants defendant's motion for summary judgment on the excise tax issue because there is no statutory or other legal authority to deduct an estimated federal excise tax when computing the TPT.

**FACTS AND PROCEDURAL HISTORY**

The facts are taken from the undisputed documents, including deposition transcripts of plaintiff's owner, defendant's former auditor who performed an audit of plaintiff in 2012, the audit supervisor of the audit at issue here, and defendant's employee who testified as to deductibility of the federal excise tax.

Plaintiff, Barrister Cigars, LLC, ("BC"), a single-member entity created in 2006, is in the business of buying and selling premium cigars. It purchased cigars from out-of-state suppliers, and when needed, from other New Jersey retailers. BC sold tobacco products within and outside of New Jersey by mail order, and in person at its retail store in New Jersey. Sales included pipe tobacco and tobacco accessories. As a registered seller, BC filed Form TPT-10, the Tobacco Products Tax return.

Sometime in 2012, defendant, the Director, Division of Taxation ("Taxation") audited BC. During this time, BC computed its TPT at 30% of its out-of-state

sellers' invoiced amounts. The auditor (who retired in 2013), advised BC that it was appropriate to deduct federal excise tax payable by the manufacturer of tobacco products under the Internal Revenue Code, for purposes of computing the TPT. The audit resulted in no change to BC's filed TPT returns.

Thereafter, BC deducted federal excise tax to compute its TPT liability. BC's employee estimated this amount based on the number of cigars purchased. BC's owner, when deposed, stated that BC's purchases usually exceeded the statutory federal excise tax cap which he estimated was around 40.2 or 40.6 cents per cigar. Thus, for example, when an out-of-state seller invoiced BC $151.17 for a box of 25 cigars, BC estimated $10.50 as the excise tax and deducted this amount from the $151.17 invoiced amount before computing the TPT.

Sometime in 2014, BC decided to change its method of computing the TPT by estimating the wholesale price of the purchase (i.e., what would have been paid to a manufacturer), and paying TPT on this amount. BC had learned that another New Jersey cigar seller, Smoker's Haven, had successfully used this method whereby it computed the TPT on 40% of its purchase invoice based on a letter obtained from a Florida seller, Rocky Patel Premium Cigars. The letter provided to the court was undated, addressed to Smoker's Haven, and stated as follows: "Please be advised that our manufacturing cost for tobacco products on average is 40% of the invoiced price. That figure represents the actual cost of tobacco and

4

manufacturer of the product." (sic). Apparently, Smoker's Haven's TPT return was accepted by Taxation, i.e., resulted in no additional assessment for TPT. Per BC's owner, another New Jersey based cigar seller, The Tobacco Shop, had also used the 40% letter to compute its TPT and its return was also accepted by Taxation despite an audit.

Thereafter, BC used this process with the 40% letter from Rocky Patel Premium Cigars and its TPT return using this method was accepted (i.e., not audited) by Taxation. Going forward, BC then obtained similar letters from various other out-of-state sellers to support its computation of the tax due on its TPT returns. The letters provided to this court were from 2016 to 2018, issued by out-of-state sellers, and uniformly stated that the "manufacturing cost for tobacco products, on average, is 40% of the invoice price" (i.e., of the sellers' invoice to BC) (the "40% letters").[1] The 40% letters noted that the "average percentage" represented the "actual cost of tobacco and manufacturing of products." Some letters stated that the 40% estimate included "packaging costs."

Using the prior example where an out-of-state seller invoiced BC $151.17 for a box of 25 cigars, BC would first deduct the estimated excise tax of $10.50 from

---

[1] BC included 26 letters in its moving papers. They were dated from 2015 through 2017. Nine of these were addressed to BC. Thirteen were addressed to Smoker's Haven and two to The Tobacco Shop, both New Jersey based cigar shops. Two were "To Whom It May Concern" letters, thus, not addressed to any entity or person.

the invoiced amount, and then estimated that seller's purchase price (i.e., what that seller paid to buy the box of cigars) as $56 (40% of $140 rounded). This $56 was the base for calculating the TPT due. BC's owner stated that the balance of the invoice, likely the seller's approximate "profit," was recorded on its books as a "placeholder," and labeled as nontaxable "packaging and promotion." In the example, the nontaxable balance would be $84 ($151 invoice amount, less $10.50 for excise tax, less $56 the estimated wholesale price). Thus, under the 40% method, BC paid about $15 as TPT on the $151 invoiced amount (30% of $56), whereas before it would have paid about $45 as TPT (30% of $151, the invoiced amount).

During his deposition, BC's owner stated that BC deemed itself to be a distributor because it was importing cigars into New Jersey, therefore, it, and not the end user, is liable for the TPT. He stated that BC does not purchase cigars from manufacturers, and that he had contacted BC's suppliers "asking for a letter approximating what their cost was since they would not disclose . . . what their cost was to purchase the tobacco from the actual manufacturers." Some "refused" to provide the requested letters. He stated that he did not, and could not, verify what these sellers actually paid to their supplier, and when he tried asking for this information, the sellers stated that they would "not disclose the amount." He noted that BC used the estimated wholesale price as the base for computing the TPT only on its purchases from out-of-state sellers which did not pay sales tax to New Jersey

6

and who/which provided the 40% letters to BC.  He stated that when BC purchased cigars, the out-of-state suppliers required that BC provide a copy of its license to indicate that BC would pay the TPT.

BC's owner noted that there were "certain distributors" that offered to pay the "wholesale tax" for the "retail distributor," however BC did not choose this mechanism (except for when BC purchased cigars from other New Jersey retail locations).  When asked why, he replied that it was "easier to have [BC] be responsible for its own taxes," and because there was "absolutely no way for the end user to pay the [TPT] in a correct format" (there was no line item on the TPT return for a consumer).  Moreover, he perceived that BC would be "violating" the law if it charged the 30% tax as part of a retail sale because it was importing cigars into New Jersey, and thus could not sell cigars without first paying the "correct wholesale tax" to the State.

In 2020, Taxation audited BC for the periods February 1, 2016, through January 31, 2020.  Based on the purchase invoices provided by BC, Taxation's auditor determined that BC had underreported its taxable purchases for the one-year sample period, and computed the TPT at 30% of the invoiced amounts for those purchases (less separately stated shipping charges).  The auditor applied the tax so computed to the four-year audit period for a total assessment of $153,324.48 (exclusive of interest and penalty).  His audit report stated that BC's method of

computing the TPT was wrong since under N.J.S.A. 54:40B-3(c), if a distributor had not paid the "wholesales sales tax" on a sale, then the 30% compensating use tax is payable by the retail dealer or consumer based on the "price paid or charged for the tobacco product."

BC timely protested the audit to Taxation's Conference and Appeals Branch which upheld the audit.[2] Taxation issued a final determination concluding that since the out-of-state sellers had not paid the TPT, BC should pay a compensating use tax at 30% under N.J.S.A. 54:40B-3(c) and 54:40B-5(b).

BC timely appealed the final determination to this court contending that as a distributor, it is entitled to calculate the TPT upon the lower wholesale price paid by a distributor to a manufacturer. It contended that it could estimate this lower wholesale price since it did not make purchases directly from a manufacturer. BC also alleged that it should be allowed to deduct the federal excise tax from the tax base because this was permitted by Taxation during its prior 2012 audit.

When deposed for this litigation, the former auditor who performed the 2012 audit stated that he considered BC as a retailer, and the out-of-state sellers as BC's suppliers. He would deem the wholesale price for purposes of the TPT as the amount

---

[2] The conferee noted that Taxation could have imposed a higher tax liability by using the "exception percentage" over the audit period but he decided not to disturb the auditor's more beneficial tax treatment (multiplying the tax assessed on the taxable purchases for the sample period, times the entire audit period).

8

invoiced by the supplier to the retailer. He also stated that when he audited BC, he agreed with BC's methodology of deducting the federal excise tax from the supplier's invoice price because he had understood the deduction to be appropriate based on either co-worker input or instructions from his supervisors. Subsequently, however, the auditor stated, he ceased this practice, likely due to supervisory instructions, thus had denied the deduction when auditing a cigar seller unrelated to BC. When BC learned of this deduction denial from the unrelated entity, BC's owner called the auditor who responded that Taxation was now including the federal excise tax in calculating the TPT. The former auditor conceded that he may have been mistaken in permitting the deduction, but agreed that his audit conclusions were always subject to supervisory review before they were finalized. He could not recollect if he accepted the 40% letters to compute the TPT but stated that he would, if needed, estimate an assessment under the TPT Act using other indices such as sales tax returns to estimate the sales, gross receipts and gross profit margin.

Another Taxation employee, a Tax Services Specialist who was not involved in either of BC's 2012 or 2020 audit, was deposed only as to the federal excise tax issue. He testified that there can be no deduction for federal excise tax because the TPT Act does not provide for one. He stated that he was unaware of any position to the contrary in his twenty-plus years at Taxation but agreed that there was no written pronouncement or regulations in this regard. He also stated that if an auditor took

9

the position that a federal excise tax was deductible due to Taxation's policy, it would be inaccurate.

At her deposition, the 2020 audit supervisor stated that the 2020 audit was unique since she had never seen the 40% letters before. She agreed with the auditor that the TPT should be based on the price BC paid when it purchased cigars from the out-of-state sellers. She also pointed out that the TPT Act's permission to use estimates to compute the TPT applied to Taxation, not the taxpayer, and she knew of no instance where a taxpayer was allowed to estimate the wholesale price of tobacco products to compute the TPT it owed. She noted that deductibility of the federal excise tax was not an issue in the 2020 audit, and that the auditors she supervised understood that while this tax is not deductible, separately stated shipping costs on the invoices are deductible before computing the TPT.

Post-discovery, BC moved for summary judgment. In response, Taxation filed its motion for summary judgment. Each party filed respective oppositions and reply briefs to the other party's motion, and subsequently, supplemental briefs at the court's direction as to how neighboring states (alluded to in the TPT Act's legislative history) may have addressed the issues presented to this court.

**ANALYSIS**

Both parties rely heavily upon the TPT's statutory scheme and its legislative history in support of their respective positions. Therefore, it is set forth here.

10

I. THE TPT ACT

A. *1990 Enactment*

The TPT Act was enacted by <u>L.</u> 1990, <u>c.</u> 39 as the "Tobacco Products Wholesale Sales and Use Tax Act."[3]  It imposed a 24% tax on sale proceeds, i.e., on the "receipts from every sale of a tobacco product by a distributor or a wholesaler to a retail dealer or consumer."  <u>Id.</u> at § 3(a).  Each of the terms "distributor," "wholesaler," and "receipts," were defined as follows:

> Distributor: "a person, wherever resident or located, who brings or causes to be brought into this State a tobacco product purchased directly from the manufacturer thereof and receives, stores, sells or otherwise disposes of the same after it reaches this State." <u>Id.</u> at § 2.

> Wholesaler: a person "other than a distributor," and who purchased tobacco products "from any other person who purchases from the manufacturer" for purposes of "resale to retail dealers or to other persons for the purposes of resale only." <u>Ibid.</u>[4]

> Receipt: "the sale price of a tobacco product valued in money, whether received in money or otherwise, including early payment discounts, and without any deduction or exclusion for expenses or costs whatsoever." <u>Ibid.</u>

The liability for and collection of the TPT functioned akin to a traditional sales tax where if the "taxable sale of the [tobacco] product does not take place," then a

---

[3]  At that time, tobacco products were "subject to the retail sales and use tax but not to wholesale sales or excise taxes."  <u>Assembly Approp. Comm. Statement to Assembly Comm. Substitute for A. 3608 and 3613</u> 1 (June 14, 1990).

[4]  The definition also included a person which "services retail outlets" by maintaining a place from which tobacco products could be purchased.  <u>L.</u> 1990, <u>c.</u> 39 § 2.

"compensating use tax at the same rate as the whole sales tax" is imposed.  Assembly

Approp. Comm. Statement to Assembly Comm. Substitute for A. 3608 and 3613 1.

Unlike the traditional sales tax, the tax base was the wholesale sales price, i.e.,

receipts of the wholesaler or distributor, which shifted to the retailer or consumer on

nonpayment of the sales or use tax by the wholesaler or distributor.  The shifting

liability (all at 24% tax rate) was imposed in stages but only if tax at the prior stages

were unpaid.  Thus:

> a. There is imposed a tax of 24% upon the receipts from every sale of a tobacco product by a distributor or a wholesaler to a retail dealer or consumer.
>
> b. Unless a tobacco product has already been or will be subject to the wholesale sales tax imposed in subsection a. of this section, if a distributor or wholesaler uses a tobacco product within this State, there is imposed upon the distributor or wholesaler a compensating use tax of 24% measured by the sales price of a similar tobacco product to a retail dealer.
>
> c. Unless a wholesale use tax is due pursuant to subsection b. of this section, if a distributor or wholesaler has not collected the wholesale sales tax imposed in subsection a. of this section upon a sale that is subject to the wholesale sales tax imposed in that subsection a., there is imposed upon the retail dealer or consumer chargeable for the sale a compensating use tax of 24% of the price paid or charged for the tobacco product, which shall be collected in the manner provided in subsection b. of section 5 of this act.

[L. 1990, c. 39, § 3.][5]

B. *2001 Amendments*

By L.1997, c. 264, the tax rate was doubled, thus, increased to 48% of the wholesale sales price. That increase caused loss of revenues. Sponsor's Statement to A. 2998 8-9 (Dec. 7, 2000) (the anticipated stability of increased revenues from the TPT under the 1997 law did not occur, instead, "those revenues have been declining," and sales of "cigars, a major component of the wholesale tax," were "down dramatically since 1997" forcing closure of small businesses and resort to out-of-state purchases "where tax rates are so much less"). Neighboring states either charged no tax (Pennsylvania) or at lower rates (Connecticut and New York at 20%; Massachusetts, Maryland, and Delaware at 15%). Id. at 9. New Jersey's 48% rate was effectively higher because those states "levy the tax on the manufacturer's selling price" as opposed to New Jersey's levy "on the higher wholesaler's selling price." Ibid.

The 2001 amendments thus sought to reduce the tax rate "to bring New Jersey's tax base [and tax] in line with those in surrounding states" to "help increase the State's competitiveness and help stem the current decline in revenue from that tax." Ibid. See also Assembly Approp. Comm. Statement to A. 2998 1 (Dec. 20,

---

[5] The term "retail dealer" was defined as a person "engaged in this State in the business of selling any tobacco product at retail" and included a person placing tobacco products in a vending machine. L. 1990, c. 39 § 2.

2001) (the changes to the law would effectuate a conversion of the TPT "from one imposed on the price that a distributor <u>receives from the sale</u> of tobacco products to a vendor or consumer to one imposed upon the (lower) price that the distributor <u>pays to buy</u> the products from the manufacturer," and a reduction of the rate "on which the tax is imposed on this new price base from 48% to 30%").[6]

When introduced, the Bill imposed the TPT only on the distributor upon occurrence of certain events, thus, when the distributor either (1) brings products from out-of-state into New Jersey for sale in New Jersey, (2) makes/manufactures tobacco products for sale in this State, or (3) "ships/transports products to a retail dealer in the State to be sold by that retail dealer." <u>A. 2998</u> § 3(a). The Bill accordingly expanded the definition of a distributor to include a person engaged in the business of selling tobacco products in New Jersey (1) who brings, or causes to be brought into this State from without the State a tobacco product for sale," (2) who makes/manufactures tobacco products in this State for sale in the State, (3) who is an out-of-state seller that "ships or transports tobacco products to a person in this

---

[6] The Fiscal Note to <u>A. 2998</u> which included a report of the Executive Branch, and the Office of Legislative Services ("OLS") was cautionary as to the projected lower revenue losses due to the lower tax rate and smaller tax base (i.e., one that "would not include the distributor's markup"). Per the OLS, despite the amendments, "out-of-state purchases will continue" since "[t]he incentive to take advantage of Pennsylvania's tax-free status will remain" and "recent historical experience suggests that consumer spending for tobacco products is relatively price inelastic -- price changes have a limited impact on spending behavior." Any "change in tobacco sales due to the tax reduction," would thus be of a "limited impact."

14

state to be sold to a retail dealer," or (4) who receives tobacco products on which the tax has not or will not be paid by another distributor." Id., § 3(2).[7] The tax rate was reduced to 30% and the base was "the wholesale price." Id., § 3(a). The term "wholesale price" meant the "established price for which a manufacturer sells tobacco products to a distributor." Id., § 2.

Amendments during its passage resulted in deleting the incidence of the tax upon the distributor and events triggering the imposition in the first subsection of the tax imposition provision. Further, the Legislature "clarif[ied] that the tax is based on the actual price paid for the products." Assembly Approp. Comm. Statement to A. 2998 2.

L. 2001, c. 448 thus expanded the definition of who is a distributor, imposed a 30% wholesale tax without referencing a distributor or wholesaler in the first stage of the tax imposition, and retained the chain of collection (via a compensating use tax) thus:

> a. There is imposed a tax of 30% upon the wholesale price upon the sale, use, or distribution of a tobacco product within this State.
>
> b. Unless a tobacco product has already been or will be subject to the wholesale sales tax imposed in subsection a.

---

[7] By L. 2018. c. 50, § 3, the Legislature amended the last sentence in the definition of "Distributor" to substitute "on which the tax has not or will not be paid" with "without receiving proof that the tax has been or will be paid." The sentence now defines a Distributor as including "a person who receives tobacco products without receiving proof that the tax has or will be paid by another distributor."

15

of this section, if a distributor or wholesaler uses a tobacco product within this State, there is imposed upon the distributor or wholesaler a compensating use tax of 30% measured by the sales price of a similar tobacco product to a distributor.

c. Unless a wholesale use tax is due pursuant to subsection b. of this section, if a distributor or wholesaler has not paid the wholesale sales tax imposed in subsection a. of this section upon a sale that is subject to the wholesale sales tax imposed in that subsection a., there is imposed upon the retail dealer or consumer chargeable for the sale a compensating use tax of 30% of the price paid or charged for the tobacco product which shall be collected in the manner provided in . . . [N.J.S.A. 54:40B-5].

[N.J.S.A. 54:40B-3.]

The 2001 law deleted the definition of the word "receipt" and defined "wholesale price" as the "actual price for which a manufacturer sells tobacco products to a distributor." Ibid. There was no change to the definition of a retail dealer.

II. APPLICATION OF THE TPT ACT TO THIS MATTER

A. *Does BC Qualify as a Distributor?*

It is undisputed that BC sells tobacco products at retail. However, by virtue of the statutory definition under N.J.S.A. 54:40B-2, it also qualifies as a distributor because it buys tobacco products from out-of-state sellers which do not collect the 30% tax due under the TPT Act from BC at the time of the sale. Unlike the definition

16

of a wholesaler, which excludes a distributor,[8] neither the definition of the distributor nor that of a retail detailer are mutually exclusive. While the 1990 law defined a distributor as a person bringing tobacco products into this State that were "purchased directly from the manufacturer thereof" for storage or sale, the 2001 amendment included a New Jersey cigar seller who brought the same from out-of-state, to be sold in New Jersey. Thus, by virtue of N.J.S.A. 54:40B-2, a retailer can also be deemed to be a distributor. Taxation concedes this.

B. *As a Distributor, is BC Entitled to Always Pay TPT at the Lower Wholesale Price?*

BC argues that as a distributor, it always qualifies to pay TPT at the wholesale price. Taxation points out that the more specific provision, N.J.S.A. 54:40B-3 controls over the general definition provisions of N.J.S.A. 54:40B-2 therefore the status of a taxpayer is irrelevant for purposes of taxability.

The 2001 floor amendments removed the tax incidence and instances which isolated the imposition of tax on the distributor, when the distributor caused certain events (buy, sell, make, manufacture). This may possibly be because the events/instances were already listed in the definition of "Distributor." Therefore, the status as distributor does not assist the inquiry.

---

[8] Similarly, a consumer is defined as anyone other than "a distributor, manufacturer or wholesaler" who buys a tobacco product "for consumption, storage, or use in this State." N.J.S.A. 54:40B-2.

17

However, the court is unpersuaded by Taxation's contention that the lower tax base applies only to a "taxpayer who purchases tobacco products from a manufacturer." It is true that the definition of "wholesale price" clearly references a distributor. See N.J.S.A. 54:40B-2 ("'Wholesale price' means the actual price for which a manufacturer sells tobacco products to a distributor."). Yet (a) the definition of a distributor is not limited to a person who buys directly from a manufacturer; (b) the definition of "wholesale price" does not exclude or foreclose a person who/which does not make purchases directly from a manufacturer from using a lower tax base to compute the tax due under the TPT Act. Importantly, the legislative intent was to reduce the tax base and rate to encourage cigar sales in New Jersey.

A statutory "definition[] cannot be analyzed in a vacuum. The intent of the entire statute must be considered." Kasot, Inc. v. Dir., Div. of Taxation, 24 N.J. Tax 588, 595 (Tax 2009) (citation and internal quotation marks omitted). A harmonious construction of the three provisions implicated here (the tax imposition; definition of distributor; definition of wholesale price), and effectuation of the legislative intent results in a conclusion that while the status of a seller as a distributor does not "freeze" the distributor's taxability at 30% of the wholesale price, it does not follow that only a distributor who buys directly from a manufacturer qualifies to use the wholesale price as the tax base.

18

Thus, a distributor/retailer such as BC is not foreclosed from obtaining a manufacturer's actual selling price from parties other than a manufacturer (such as from other out-of-state distributors). This will not, as Taxation contends, render application of N.J.S.A. 54:40B-3(c) redundant or engender abuse. The statute provides an orderly scheme of taxability such that non-compliance with one requirement will activate the other. A taxpayer which does not comply with subsection (a) must comply with subsection (b) or else will be subject to provisions of subsection (c). Here for instance, BC's liability for tax under the TPT Act would be at 30% of the price charged to BC by the out-of-state sellers, as evidenced by Taxation's audit assessment. See also N.J.S.A. 54:40B-8(a) (the TPT "return shall show the total amount of wholesale price paid for sales to the distributor or wholesaler for tobacco products that are payable during the period" the tax due and shall "also reflect any use tax due").

C. *Can BC Estimate the Wholesale Price?*

Taxation is correct that the Legislature has plainly defined the term "wholesale price" in N.J.S.A. 54:40B-2, and that unambiguous language controls. As explained above, that definition does not bar BC from obtaining the actual price which the manufacturer sold tobacco products to other distributors. However, the court agrees with Taxation that BC cannot substitute the actual price with blanket estimates from out-of-state sellers, such as the 40% letters here. Not only does that

contravene the statute's plain language which requires an "actual price," but it is also unsupported by the legislative history which rejected use of the industry practice (if the 40% letters are seen as "industry practice" because all of the 26 letters provided to the court used 40% as the estimate) in determining the wholesale price.[9] Moreover, N.J.S.A. 54:40B-8(a) requires a taxpayer to report the "total amount of wholesale price paid for sales to the distributor or wholesaler for tobacco products." And when the Legislature felt it appropriate it did not insist on an actual price. See e.g., N.J.S.A. 54:40B-3(b) (30% compensating use tax payable by a distributor or wholesaler is to be "measured by the sales price of a similar tobacco product to a distributor").

BC contends that its sellers will not provide the invoices from their suppliers, therefore BC has no choice but to accept the suppliers' 40% estimate. However, this trade or business strategy (possibly to avoid or limit competition) does not allow the court to read something into the statute's plain language. While the Legislature was no doubt concerned about the loss of revenues, and therefore reduced the tax rate and adjusted the tax base, it was not concerned with whether, or how, cigar sellers

---

[9] N.J.S.A. 54:40B-2 refers to "actual price" paid to the manufacturer. N.J.S.A. 54:40B-3 imposes the tax "upon the wholesale price." Neither statute references the manufacturer's costs. Costs are different from the selling price even if the selling price may include (pass on) some or all of the costs. The 40% letters uniformly reference a manufacturer's costs, thus, are additionally questionable.

structure their purchase agreements. In other words, while the sale/use of the tobacco product cannot be subject to multiple taxation, the tax due under the TPT Act must be collected and paid regardless of internal business practices. This is evidenced by our Legislature's rejection of industry practice as a barometer to determine the TPT's base. Therefore, the alleged refusal of the out-of-state suppliers to provide objective evidence in support of their 40% estimate (such as the suppliers' purchase invoices) does not require the court to accept estimates as the next best alternative.[10]

A review of the tobacco products tax imposed by other states also does not support, nor provide a reasonable basis to accept BC's contention that estimating the tax base is permissible when information of the manufacturer's actual selling price is withheld by suppliers. One is because, like New Jersey, none of these states' statutory scheme permit estimates, and the other is because the statutes uniformly impose the tax on the purchase price. See e.g., Conn. Gen. Stat. §§ 12-330c(a); 12-330a(6) (tax imposed upon a distributor at 50% of the "wholesale sales price" of tobacco products (capped at fifty cents per cigar), the quoted term defined as "the

---

[10] BC's owner, when deposed, stated that BC chooses not to have the out-of-state seller withhold/collect the TPT at the time of BC's purchases because he perceived that the definition of "Distributor" under N.J.S.A. 54:40B-2 bars BC from choosing this option. This is incorrect. While an importer is a distributor, the tax is on the "sale, use, or distribution" of a tobacco product in this State under N.J.S.A. 54:40B-3(a). Therefore, the definition does not bar BC from opting to have the out-of-state seller pay the TPT to New Jersey.

21

price at which the distributor purchased such products"). While a manufacturer can use a tax base of the "value" of the products sold "if no price has been set . . . for such products," a distributor must use the purchase price as the tax base. Id. § 12-330a(6). See also 30 Del. Code Ann. § 5301(23) (tax is on a distributor at 30% of the "wholesale purchase price," which is defined as "the price for which a manufacturer sells a tobacco to a distributor exclusive of any discount, rebate or other reduction"); Md. Code Ann., §§ 12-105(2)(ii)(2); 12-101(m) (tax base is the "wholesale price of the premium cigars," with "wholesale price" defined as the "price for which a wholesaler buys" the tobacco products but "exclusive of any discount, trade allowance, rebate or other reduction"); Mass. Gen. Laws. Ch. 64C, §§ 7B(b); 7B(a) (excise tax is imposed on cigar distributors based on the "wholesale price," which is defined as "the price at which the cigar distributor purchased these products"). While a manufacturer is permitted to use a tax base of the "value" of the products sold "if no price has been set . . . for such products," a distributor or retailer must use their respective purchase price as the tax base. Ibid.

New York imposes an excise tax at 75% of the "wholesale price," which is defined as the "price for which a manufacturer or other person sells tobacco products to a distributor, including the federal excise taxes paid by the manufacturer or other person, before the allowance of any discount, trade allowance, rebate or other reduction." N.Y. Tax §§ 471-b(1)(a); 470(6). However, BC notes, New York issued

22

a guidance bulletin (revoked as of October 1, 2020), under its regulatory authority, permitting a 38% "industry standard adjustment ratio" when "an established price or manufacturer's invoice is not available." <u>See</u> TSB-M-13(12)(M) (N.Y. Dep't. of Tax. & Fin., Dec. 5, 2013). Although the tax periods at issue here (February 1, 2016, through January 31, 2020) are prior to the Bulletin's revocation, the court does not find the guidance applicable because our Legislature rejected using an "established price" when enacting the 2001 amendments to the TPT Act.

In this connection, BC's reliance on the TPT Act for its use of an estimated tax base is flawed. The Legislature authorized Taxation to determine the appropriate amount of the TPT "from such information as may be available" when a TPT return is not filed, or if filed, is incorrect or insufficient. N.J.S.A. 54:40B-10. The TPT may also, if "necessary . . . be estimated on the basis of external indices, such as purchases, location, scale of charges, comparable charges, number of employees or other factors." <u>Ibid.</u>[11]

---

[11] Under N.J.S.A. 54:40B-7, a taxpayer must maintain records "of every charge for and of all amounts of wholesale price paid or due thereon and of the tax payable thereon," including true copies of "each invoice, receipt, statement or memorandum upon which" the TPT is stated. Under N.J.S.A. 54:40B-12(d), Taxation can "require any distributor . . . required to pay tax to keep detailed records of all amounts of wholesale prices paid for the tobacco products on which taxes are payable, and names and addresses of wholesalers, distributors, retail dealers and consumers, and other facts relevant in determining the amount of tax due" for Taxation's use.

Clearly, the above authority is limited to Taxation. The statute references and limit its application to the "director" of Taxation. Thus, the TPT Act allows only Taxation to estimate the tax due under the TPT Act when a taxpayer's records are absent or insufficient. An extension of this authority to BC would render the remainder of N.J.S.A. 54:40B-10 meaningless. The remainder elucidates Taxation's obligations and a taxpayer's appeal rights if an estimated assessment is made, thus:

> Notice of the determination [of the amount of tax due] shall be given to the distributor, wholesaler, retail dealer or consumer liable for the payment of the tax. The determination shall finally and irrevocably fix the tax unless the wholesaler, distributor, retail dealer or consumer against whom it is assessed, within 30 days after the notice date of the determination, shall apply to the director for a hearing, or unless the director on the director's motion shall redetermine the same. After the hearing the director shall give notice of the determination to the wholesaler, distributor, retail dealer or consumer against whom the tax is assessed.
>
> [N.J.S.A. 54:40B-10.]

In sum, the court rejects BC's arguments that its use of the 40% letters is permissible to compute its tax liability under the TPT Act.

D. *Is Summary Judgment Appropriate?*

Because the court finds that while BC is not foreclosed from using the manufacturer's actual selling price to a distributor as its tax base, it cannot estimate the selling price, summary judgment affirming Taxation's assessment is inappropriate. The 40% letters (a majority addressed to other sellers) are hearsay

24

and do not constitute objective credible proof of the wholesale price for tobacco products BC purchased for the tax years at issue.

Therefore, BC should be given the opportunity to obtain the manufacturer's actual selling price to a distributor at trial of the matter. See e.g., Duncan Truck Stop, Inc. v. Dir., Div. of Taxation, 4 N.J. Tax 367, 375-76 (Tax 1982) (the presumptive correctness of Taxation's final determination can be overcome with proof of "bona fide business records" which are qualitatively and quantitatively credible). In this regard, the court rejects BC's request to "review cigar manufacturers' selling prices for cigars and distributors' purchase prices for cigars from Taxation's records and industry data to discover the wholesale price consistent with the TPT" Act. BC has the burden of not only overcoming the presumption of correctness of Taxation's determination but also the burden to persuade the court what the "actual" manufacturer's wholesale selling price is. This is in keeping with the statute's plain language and the Legislature's express rejection of using any established or industry price.

Therefore, the court will deny both parties' motions for summary judgment as to the issue of the estimated wholesale price. See R. 4:46-2(c) (summary judgment is appropriate where documents provided to the court show that "there is no genuine issue as to any material fact challenged" and "a fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion,

25

together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact").

III.  DEDUCTION OF ESTIMATED FEDERAL EXCISE TAX FROM THE TAX BASE

BC also argues that manufacturers "sell tobacco products to distributors at agreed-upon prices," and tack on the federal excise tax imposed under I.R.C. § 5701(a).  Since the tax is added, it cannot, per BC, be "part of the 'actual price for which a manufacturer sells tobacco products to a distributor'" under N.J.S.A. 54:40B-2.[12]

The court is unpersuaded.  BC is isolating the term "actual price" without consideration of the remainder of the sentence.  The court cannot interpret a statute so that a sentence, clause, or word is ignored or rendered insignificant.  Here, the statute signals that the wholesale price is the amount that a manufacturer sold the tobacco products to a distributor.  The common sense meaning of the entire sentence is that the TPT is calculated at 30% on the amount shown on the manufacturer's invoice or bill as due and payable by the distributor.  If the manufacturer passes that

---

[12]  Under I.R.C. § 5701(a), an excise tax is imposed "[o]n cigars, manufactured in, or imported into the United States" and on "large" cigars (based on weight per thousand), at 52.75% "of the price for which sold," capped at 40.26 cents per cigar.

cost on to the distributor, thus, including it in the selling price, that selling price is the tax base, i.e., the wholesale price on which the 30% tax should be computed.[13]

The court will not imply that the "actual" price means "net" price. It is true that the definition of "receipt" (which as noted was "without any deduction or exclusion for expenses or costs whatsoever") was deleted from the TPT Act in 2001. However, this was simply because the tax base changed from sales receipts to wholesale price, thus cannot be relied as authority to imply a deduction. The legislative history also does not support the use of a net price. See e.g., Sponsor's Statement to A. 2998 (tax base changed from a "higher wholesaler's selling price" to a lower "manufacturer's selling price") (emphasis added).

If the New Jersey legislature wanted to, it could have defined the wholesale price as one net of deductions. It did not. See e.g., I.R.C. § 5702(l)(2)(B) (in determining the "price" for which large cigars are sold, any "charge incident to placing" the tobacco product "in condition ready for use" should be included, however, the federal excise tax under I.R.C. § 5701(a)(2) and any state "retail sales tax," whether imposed upon the seller or buyer, provided it is "stated as a separate charge," should be excluded). Cf. Mass. Gen. Laws. Ch. 64C, §7B(d) ("The amount of the excise advanced and paid by a cigar distributor or cigar retailer . . . shall be

---

[13] While the excise tax is imposed on the manufacturer, it may choose to absorb that cost, i.e., not pass it on to the buyer distributor or wholesaler (not normally a reality in the marketplace), thus, the invoice may reflect a reduction in this regard.

added to and collected as part of, the sales price of the cigars"); Md. Code Ann., § 12-101(m) ("wholesale price of the premium cigars" means the "price for which a wholesaler buys" the tobacco products but "exclusive of any discount, trade allowance, rebate or other reduction");[14] N.Y. Tax § 470(6) ("wholesale price" is the "price for which a manufacturer or other person sells tobacco products to a distributor, including the federal excise taxes paid by the manufacturer or other person, before the allowance of any discount, trade allowance, rebate or other reduction"). Cf. Ferrara v. Dir., Div. of Taxation, 127 N.J. Super. 240 (App. Div. 1974) (a producer or distributor is liable for motor fuels tax, therefore, must include the tax in computing gross receipts for purposes of corporate income tax).

BC also assumes that a manufacturer always pays the excise tax at the capped amount (40.26 cents per cigar, see n.12), therefore, computes its estimated deduction using this amount. However since (a) the base for the federal excise tax is exclusive of the imposed excise tax, see I.R.C. § 5702(l)(2)(A), and (b) BC does not have the manufacturer's invoice, BC's estimated deductible amount is suspect.

BC maintains that because it was advised by Taxation's auditor to deduct the federal excise tax, Taxation should be estopped from now contending that such a

---

[14] Form 601 of the tax return specifies that the tax is on the total of "all invoices for untaxed premium cigars and pipe tobacco purchased from" a manufacturer, less any credits, but without "reduction of discounts, rebates, trade allowances, or the federal tobacco floor tax."

28

deduction is not statutorily permitted. Precedent is clear that absent a regulation or formal policy, an auditor's mistaken belief (even if reasonable) does not control the application of a statute. Black Whale v. Dir., Div. of Taxation, 15 N.J. Tax 338, 354 (Tax 1995). Nor do the principles of equitable estoppel apply if Taxation's assessment accords with the plain language of the statute. Airwork Serv. Div. v. Dir., Div. of Taxation, 97 N.J. 290 (1984).

Here, the documents and information provided to the court do not evidence the existence of any such formal policy or regulation which permits deduction of an estimated federal excise tax from the tax base so that the TPT is computed on a net basis. Therefore, the court grants summary judgment on this issue to Taxation.